# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMIE BRAYMAN,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations of Social Security,<br><br>    Defendant. | Case No. CV 17-06043 RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Jamie Brayman ("Plaintiff") challenges the Commissioner's denial of his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. PROCEEDINGS BELOW

On October 10, 2013, Plaintiff protectively filed an application for DIB and SSI alleging disability beginning September 1, 2012. (Administrative Record ("AR") 198.) His application was denied initially on March 5, 2014, and upon reconsideration on May 1, 2014. (AR 111, 119-23.) On June 12, 2014, Plaintiff

filed a written request for hearing, and a hearing was held on February 22, 2016. (AR 125.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 33-56.) On April 1, 2016, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] from September 1, 2012 through the date of decision. (AR 28.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-3.) Plaintiff filed this action on August 15, 2017. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2012, the alleged onset date ("AOD"). (AR 20.) At **step two**, the ALJ found that Plaintiff has the following severe impairments: status post left knee reconstruction surgery; right knee medial meniscus tear and anterior cruciate ligament tear; left shoulder impingement syndrome; cervical spine strain; bilateral carpal tunnel syndrome; and obesity. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 21.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work . . . . specifically as follows: he can stand and walk two hours out of eight-hour day; he can occasionally perform postural activities including occasional balancing; he is precluded from climbing ladders, ropes, or scaffolds and working at heights and hazards; he can occasionally climb ramps and stairs; he can

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

2

> occasionally reach overhead with the non-dominant, left upper extremity; he is precluded from exposure to temperature extremes, dust fumes, and gases; and he is precluded from walking on uneven terrain.

(AR 21-22.)

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work. (AR 26-2.) At **step five**, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity," the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (AR 27.) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date of decision. (AR 28.)

## III. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence, and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is

susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbin*s, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises a single claim for review: whether the ALJ properly evaluated Plaintiff's credibility. (Joint Submission ("JS") 2.) For the reasons below, the Court affirms the credibility determination.

### A. The ALJ's Credibility Determination Is Supported By Substantial Evidence

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for rejecting his testimony. (*See* JS 3-8.) The Commissioner argues that the ALJ's credibility findings are supported by substantial evidence. (*See* JS 8-11.)

#### 1. Plaintiff's Testimony

At the administrative hearing in February 2016, Plaintiff testified that he was 40 years old and had one year of college education. (AR 36.) Plaintiff testified that he stopped working in September 2012 due to the fact that he could no longer stand or walk. (AR 41.) Plaintiff could not recall whether he received unemployment compensation after he stopped working, but testified that he was receiving food stamps. (AR 42-43.)

Plaintiff testified that he has a torn ACL and a torn meniscus in his right knee, has osteoarthritis in both knees, and has had four surgeries on his left knee. (AR 43-44.) He stated that he has not had surgery on his right knee due to issues

with the Affordable Care Act and the need to get Medicare, but also stated that the did not receive a referral from the doctor for the surgery. (AR 44, 50.)

In November 2012, Plaintiff was walking with knee braces. (AR 44-45.) Prior to twisting his knee in 2013, he had not had any problems with the right knee. (AR 45.) In August 2013, Plaintiff testified that, aside from a brace on his left knee, he was "okay" and had a normal gait. (AR 45.) With respect to his right knee, Plaintiff had not had any shots for pain; with respect to his left knee, Plaintiff had not had any treatment since 2012. (AR 45-46.)

Plaintiff testified that he could not walk without a walker, which he had been using for at least six months. (AR 46-47.) Plaintiff acknowledged that he did not have a prescription for the walker. (AR 47.) Plaintiff also stated that he was not able to walk very much when he had the knee braces. (AR 47.) Before he started using the walker, Plaintiff said that, at most, he could walk for five minutes and could not stand or sit for an hour. (AR 48.)

Plaintiff testified that he did not think he could lift anything. (AR 48.) He also said that he could not bend over due to his knees and weight. (AR 48.) Plaintiff testified that his weight prevents him from bending over, standing, or walking. (AR 49.) He said that he spends most of the day lying down and elaborated that he gets muscle spasms if he sits for too long. (AR 49.) Since 2012, he has experienced shooting pains up and down his legs. (AR 50.)

Plaintiff described difficulties getting out of bed because it feels like his knees have dislocated in his sleep, and consequently, it takes him a while to get out bed. (AR 50.) Someone in the house where he lives helps Plaintiff get something to eat, and then he lies down and watches television for most of the day. (AR 50-51.)

Plaintiff used to take pain medication for a while (including Norco), but stopped taking it a couple of months before the hearing, because it scared him to take the medication for so long. (AR 51.) Plaintiff stated that when he was taking

the pain medication, his pain level was a seven on a scale of one to ten with ten being the maximum pain. (AR 52.) At the time of the hearing, without medication, Plaintiff stated that his pain level was seven. (AR 53.)

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 22.) The ALJ relied on the following reasons: (1) activities of daily living; (2) conservative treatment; and (3) lack of supporting objective medical evidence. (AR 22-26.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

///

### a. Reason No. 1: Activities of Daily Living

As part of the credibility determination, the ALJ may consider inconsistencies between the claimant's testimony and his daily activities. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ noted that Plaintiff's described daily activities are not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. (AR 26.) For example, the ALJ referred to Plaintiff's examination by Dr. Vesali, during which Plaintiff reported that he does dishes and laundry for himself. (AR 26.) Additionally, in an adult function report dated December 10, 2013, Plaintiff stated that he goes to church on Wednesday and Friday nights and is able to prepare his own food and wash dishes. (AR 26.) The ALJ concluded that "[Plaintiff's] ability to participate in such activities undermined the credibility of [Plaintiff's] allegations of disabling functional limitations." (AR 26.)

The fact that Plaintiff performs some daily activities does not detract from his overall credibility, as the record does not show that this consumes a substantial part of Plaintiff's day. Plaintiff stated in his function report that he prepares cereal, sandwiches, and frozen food, meals that involve minimal preparation and time to cook. (AR 225.) Further, the mere ability to perform some tasks is not necessarily

indicative of an ability to perform work activities because "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair*, 885 F.2d at 603; *see also Molina*, 674 F.3d at 1112-13 (the ALJ may discredit a claimant who "participat[es] in everyday activities indicating capacities that are transferable to a work setting"). The critical difference between such activities "and activities in a full-time job are that a person has more flexibility in scheduling the former . . . , can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (cited with approval in *Garrison*, 759 F.3d at 1016).

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Conservative Treatment

An ALJ may discount a claimant's credibility based on routine and conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (rejecting a plaintiff's complaint "that she experienced pain approaching the highest level imaginable" as "inconsistent with the 'minimal, conservative treatment' that she received").

The ALJ observed that Plaintiff's "conservative treatment record indicates his impairments are not as severe as he alleged." (AR 23.) The ALJ noted that the record revealed that during the period when Plaintiff underwent reconstructive surgery for his left knee and subsequent physical therapy, he only received prescription medication such as Norco (acetaminophen and hydrocodone) and Voltaren gel for topical use. (AR 23.) Plaintiff reported right knee pain in October 2012 and was diagnosed with a sprain and given medication. (AR 23.) One month

later he went to the emergency room for complaints of a right knee sprain and received a morphine injection. (AR 23.) An x-ray of the right knee was unremarkable. (AR 23.) Later in November 2012, Plaintiff went to urgent care regarding his right knee and received a brace as well as Vicodin. (AR 23.) Plaintiff re-sprained his right knee in January 2013, and a MRI scan showed a tear of the medical meniscus and severe sprain and tearing of the anterior cruciate ligament, among other injuries to the knee. (AR 23.) Plaintiff was later referred to an orthopedic clinic. (AR 23.) In June 2013, he had complaints of bilateral leg swelling and was diagnosed with edema. (AR 23.) After treatment and elevation of his legs, Plaintiff was discharged in good condition. (AR 23.) In February 2013 and again in June 2013, Plaintiff was noted as having a normal gait. (AR 23-24.)

Later complaints of right knee, neck, and left shoulder pain were treated with pain medication such as Norco (acetaminophen and hydrocodone). (AR 24.)

The ALJ concluded that the evidence suggested that Plaintiff is "not in disabling pain." (AR 25.) "The treatment records reveal although [Plaintiff] has received treatment for the allegedly disabling symptoms, which would normally weigh somewhat in [Plaintiff's] favor, the record also reveals that the treatment has been generally successful in controlling those symptoms." (AR 25.) The ALJ also determined that "[r]egarding [Plaintiff's] right knee, left shoulder, cervical spine, and bilateral carpal tunnel syndrome, the lack of aggressive or consistent treatment suggests [Plaintiff's] symptoms and limitations are not as severe as he alleged." (AR 25.) Additionally, the ALJ noted that, at the time of the hearing, Plaintiff testified that he was not taking any pain medication, indicating that "his symptoms are not as severe as he purports." (AR 25.)

Because Plaintiff's treatment primarily consisted of pain medication without evidence of worsening, the ALJ permissibly discounted Plaintiff's credibility based on his conservative treatment plan. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively

with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *see also Ryan*, 528 F.3d at 1198 (an ALJ's decision should be upheld "[w]here evidence is susceptible to more than one rational interpretation"). Further while Plaintiff argues that he was having difficulty getting treatment (specifically surgery) because of insurance issues (JS at 7), the record also indicates that Plaintiff's doctors did not give him a referral for surgery. (AR 50.)

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: Lack of Supporting Objective Medical Evidence

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9h Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ accurately summarized Plaintiff's medical records, noting that an MRI of the right knee showed a tear of the medial meniscus and severe sprain and a tear of the anterior cruciate ligament. (AR 24.) A physical examination of Plaintiff in January 2014 revealed, among other findings, that Plaintiff had no difficulty getting on and off the examination table, his straight leg raising test in the seated position was negative, no tenderness in bilateral upper extremities; no tenderness on the cervical, thoracic, or lumbar spine; no tenderness on the left knee. (AR 24.) Additionally, a neurological examination showed normal motor strength, sensation and reflexes. (AR 24.)

Further, the ALJ observed that, while Plaintiff asserted that he needed to use a walker, "there is no medical evidence supporting such a claim and the medical opinions of record do not support such a claim." (AR 25.)

Overall, the ALJ determined that the evidence did not indicate that Plaintiff's symptoms were severe enough to preclude him from all work. (*Id.*) Although

Plaintiff's treatment records may be interpreted in more than one way, the evidence can rationally support the ALJ's determination. Accordingly, the Court should uphold his interpretation of the evidence. *See Ryan*, 528 F.3d at 1198; *Robbins*, 466 F.3d at 882.

### 4. Conclusion

Because the Court found that one of the ALJ's reasons for discounting Plaintiff's credibility is not clear and convincing, the Court must decide whether the ALJ's reliance on those reasons was harmless error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error," but whether the ALJ's decision is still "legally valid, despite such error." *Id.* The "remaining reasoning *and ultimate credibility determination* [must be] . . . supported by substantial evidence in the record." *Id.* (emphasis in original) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, given the discussion above concerning Plaintiff's conservative treatment and the objective medical evidence, the Court concludes that the ALJ's credibility finding is legally valid and supported by substantial evidence. *See Parra*, 481 F.3d at 751 ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995))).

## IV. **CONCLUSION**

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: August 15, 2018         /s/
                               ROZELLA A. OLIVER
                               UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**